## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UTE HELLEBUYCK,<br>on behalf of herself and all others<br>similarly situated,<br><br>                             Plaintiff,<br><br>            vs.<br><br>DR. KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security<br>in her official capacity as Acting<br>Commissioner of the Social Security<br>Administration<br><br>            and<br><br>The SOCIAL SECURITY ADMINISTRATION,<br><br>                             Defendants. | **CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

-----------------------------------------------------------------

# INTRODUCTORY STATEMENT

1.      Plaintiff, Ute Hellebuyck ("Plaintiff"), brings this Class Action Complaint ("Complaint") on behalf of herself and all others similarly situated against Defendants, Dr. Kololo Kijakazi ("Kijakazi") and the Social Security Administration ("Administration" or "SSA") (collectively with Kijakazi, "Defendants").  Allegations in this Complaint are based upon Plaintiff's knowledge and experiences, as well as counsel's investigation, and upon information and belief.  Plaintiff hereby alleges the following in support of this Complaint

2.      After the death of her spouse, Plaintiff applied to the SSA for benefits and was signed up for her own retirement benefits, as well the survivor benefits of her deceased husband.[1] However, Plaintiff, as well as the putative class (the "Class") (defined below) —to their detriment and loss—received (and continue to receive) a lesser amount than they would have received had they delayed the retirement portion of their own benefits until a later age.

3.      By law and statute, a portion of the earnings of Plaintiff and the Class are held by the SSA for many years until they elect to receive those earnings in the form of Social Security benefits.

4.      The SSA has (and had) a duty to Plaintiff and the Class to ensure they were fully informed about the option to defer their retirement benefits, and, in so doing, maximize the amount of their future benefits.[2]

5.      As set forth herein, the SSA breached its fiduciary duty to Plaintiff and the Class by failing to inform them about the option to maximize their future benefits.

6.      Pursuant to SSA policy and procedure, an application for retirement benefits or for survivor benefits is an application for both benefits, unless it is restricted:

> When a claimant is eligible for a widow(er)'s benefit (WIB) and a retirement insurance benefit (RIB) at the time of filing, inform the claimant that the application will count as an application for both types of benefits unless the applicant chooses to restrict the scope of the application. Explain the option to

---

[1] Social Security survivor benefits are paid to widows, widowers, and dependents of eligible workers. The SSA previously referred to "survivor benefits" as "widow(er)'s benefits," which will be used herein interchangeably.

[2] Full retirement age varies based on an individual's birth year, and an individual can earn delayed retirement credits if they choose to defer the retirement benefits past their full retirement age. A delayed retirement credit is an increase in the monthly benefit amount due to a beneficiary or survivor for each month a benefit is due but not paid beginning with full retirement age up to age 70. SSA, *POMS, RS-Retirement and Survivors*, ch. RS 00615, subch. RS 00615.690, sec. A. Accordingly, Claimants are eligible to receive the highest retirement benefit at age 70.

restrict the scope of the application to widow(er)'s benefits only, and that doing so will allow his or her own RIB to accumulate delayed retirement credits (DRCs) beginning with FRA. Explain that restricting the scope of the application to widow(er)'s benefits only will allow him or her to apply for RIB separately, at a later time.

*See* Social Security-GN 00201.005 General Application Taking Practices § C3.  If the Administration had fully informed survivors that they could defer their own retirement benefits, then the amount of their future benefits would be maximized because of the delayed retirement credits.  However, SSA systematically failed to inform survivors of this information, despite being legally required to do so.

7.     Although the Administration has a duty to maximize the survivors' benefits, its representatives failed, and continue to fail, to inform survivors of the option to delay their own retirement benefits in order to increase that benefit.  This failure to apply its own policies has resulted in Plaintiff and the Class being significantly underpaid.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).

9.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 405(g) and 1383(c)(3), because it is the judicial district in which a substantial portion of the events and omissions giving rise to the claim occurred; specifically, it is the judicial district in which Plaintiff resides, and in which Defendants engaged in unlawful conduct.

## PARTIES

10.     Plaintiff is a 68-year-old recipient of SSA survivors' and retirement benefits and is a resident of Huntington, New York.

11.     Kijakazi is the Acting Commissioner of the SSA and, as such, is charged with administering and supervising all benefits programs and procedures administered by the SSA, including survivor and retirement benefits.  Kijakazi is sued in her capacity as the official charged with performing the statutory and regulatory duties of the SSA and with supervisory responsibility over the Administration and its divisions, agents, employees and representatives.

12.     SSA is a federal agency charged with administering and supervising all benefits programs under the Social Security Act, including SSA survivor benefits and SSA retirement benefits.

13.     All divisions, agents, employees, contractors and representative of Defendants were acting within the scope of their agency or employment while making any of the statements and committing any of the acts alleged herein.

## STATEMENT OF FACTS

### A.     The SSA's Regulatory Scheme

14.     SSA employees must heed to the policies promulgated in the Program Operations Manual System ("POMS").  POMS instructs SSA employees and agents on how to "carry out the laws, regulations, and rulings."  *See* https://www.ssa.gov/regulations/.  "Program Operations Manual System . . . are instructive, interpretive, clarifying, and/or administrative and not designated as advisory or discretionary."  20 C.F.R. § 404.1602.

15.     The Administration's POMS state, in pertinent part:

**C.3.  Disadvantages of filing**

There are situations where filing may adversely affect current or future benefits.  Discuss the following when applicable:

When a claimant is eligible for a widow(er)'s benefit (WIB) and a retirement insurance benefit (RIB) at the time of filing, ***inform the claimant*** that the application will count as an application for both types of

benefits unless the applicant chooses to restrict the scope of the application. ***Explain the option*** to restrict the scope of the application to widow(er)'s benefits only, and that doing so will allow his or her own RIB to accumulate delayed retirement credits (DRCs) beginning with FRA. ***Explain that restricting*** the scope of the application to widow(er)'s benefits only will allow him or her to apply for RIB separately, at a later time.

*See* Social Security-GN 00201.005 General Application Taking Practices § C3 (emphasis added), https://secure.ssa.gov/poms.nsf/lnx/0200201005.

### C.4. Documenting a filing decision that may adversely affect current benefits or future benefits

If an individual makes a filing decision that may adversely affect his or her current or future benefits, ***describe*** the impact to the individual.

*See* Social Security-GN 00201.005 General Application Taking Practices § C.4 (emphasis added), https://secure.ssa.gov/poms.nsf/lnx/0200201005.

16.     SSA employees are required to inform and explain to survivors that they are entitled to, if eligible, both a survivor benefit and a retirement insurance benefit at the time of filing for benefits.[3] SSA employees must explain the survivors' option to restrict the scope of the application to survivor benefits only, and that doing so will allow their own retirement insurance benefits to accumulate delayed retirement credits.  Survivors can then apply separately, at a later time, for their retirement insurance benefits, which will have increased due to the delayed retirement credit.  However, the SSA has failed to fulfill its obligation to explain the advantages of delaying initiating their retirement benefits so claimants can make an informed decision regarding their benefits and, specifically, how to maximize the amounts they will receive.  SSA's failure is particularly egregious given that the Office of the Inspector General ("OIG") for the

---

[3]An application for retirement or survivor benefits is treated as an application for both benefits unless the applicate chooses to restrict the scope of his or her application.

Administration identified this very concern in its February 2018 OIG Audit Report (the "2018 OIG Audit") entitled, "Higher Benefits for Dually Entitled Widow(er)s Had They Delayed Applying for Retirement Benefits." *See* Exhibit A.

17.    In 2017, the OIG launched an investigation to determine whether the SSA had adequate controls in place to ensure that survivor beneficiaries were informed, as is required, of their option to maximize their retirement benefits by delaying application.

18.    The study, sampling, and investigation took place in 2017 and 2018 and it resulted in the 2018 OIG Audit.

19.    The 2018 OIG Audit concluded that the SSA failed to inform more than 13,000 survivors of their option to delay their own retirement application, and thus be eligible for a higher monthly benefit amount.

20.    OIG estimates that SSA's failure to perform its duties resulted in an underpayment of over $140 million to these beneficiaries, all of whom are among the members of the Class defined herein.

21.    The 2018 OIG Audit made several recommendations, including that the SSA evaluate the results for the beneficiaries identified in its sample and take appropriate action.  For example, appropriate action may include informing beneficiaries about the ability to defer their retirement benefit, as the SSA was required to do, and reopening their benefit applications for a reevaluation.[4]

22.    The 2018 OIG Audit further recommended that the SSA determine whether an additional 13,514 beneficiaries should, like those in the Sample, be reviewed for having been

---

[4]The 2018 OIG Audit reviewed a sample set of 41 claimants (the "Sample").

underpaid as a result of not being informed that they had an option to delay filing their application for retirement benefits.

23.     The 2018 OIG Audit recommendations also directed the SSA to remind its employees to discuss the effect of delaying their applications for retirement benefits with survivor claimants and to document the facts and decisions in accordance with SSA policy.

24.     On February 7, 2018, the SSA responded to the 2018 OIG Audit and agreed to all of its recommendations.  *See* Exhibit A, Appendix C.

25.     To date, however, the SSA has failed to comply with even a single recommendation set forth in the 2018 OIG Audit, despite having agreed to do so.  Indeed, in its subsequent OIG semi-annual reports to Congress (with the exception to the 2018 Fall OIG Semiannual Report), OIG has listed the recommendations set forth in the 2018 OIG Audit under three categories: (1) significant monetary recommendations for which corrective actions have not been completed; (2) significant non-monetary recommendations for which corrective actions have not been completed; and (3) open recommendations and reports w/unimplemented recommendations.[5]

---

[5]*See* 2022 SSA OIG SEMIANNUAL REP. pt. 2, at 42, 44, 49 (hereinafter, "2022 Fall Semiannual OIG Report"), https://oig.ssa.gov/assets/uploads/ssa-oig-semiannual-report-to-congress-fall-2022-final.pdf; 2022 SSA OIG SEMIANNUAL REP. pt 1, at 40, 42, 48 (hereinafter, "2022 Spring Semiannual OIG Report"), https://oig.ssa.gov/assets/uploads/office-of-the-inspector-general-semiannual-report-to-congress-spring-2022.pdf; 2021 SSA OIG SEMIANNUAL REP. pt. 2, at 37, 39, 45 (hereinafter, "2021 Fall OIG Semiannual Report"), https://oig.ssa.gov/assets/uploads/21-685-office-of-the-inspector-general-semiannual-report-to-congress-1.pdf; 2021 SSA OIG SEMIANNUAL REP. pt. 1, at 33, 36, 45 (hereinafter ,"2021 Spring OIG Semiannual Report"), https://oig-files.ssa.gov/semiannual/SPRING%202021%20SAR_FINAL_1.pdf; 2020 SSA OIG SEMIANNUAL REP. pt. 2, at 29, 32, 38 (hereinafter, "2020 Fall OIG Semiannual Report"), https://oig-files.ssa.gov/semiannual/Fall_2020_SAR_1.pdf; 2020 SSA OIG SEMIANNUAL REP. pt. 1, at 28, 31, 35 (hereinafter "2020 Spring OIG Semiannual Report"), https://oig-files.ssa.gov/semiannual/SAR-Spring-2020_0.pdf; 2019 SSA OIG SEMIANNUAL REP. pt. 2, at 28, 32, 35 (hereinafter, "2019 Fall OIG Semiannual Report"), https://oig-files.ssa.gov/semiannual/OIG%20Semiannual%20Report%20to%20Congress%20-

26.     In the 2019 Spring OIG Semiannual Report, SSA explained in its "corrective action" category that it was precluded from taking action based on its POMS administrative finality rules, so it would *not* take action to reopen the cases of underpayment.  2019 Spring OIG Semiannual Report, at 33.  Nonetheless, the 2018 OIG Audit continues to appear in OIG's post-2019 semiannual reports as being open and unimplemented.

27.     The OIG also made a non-monetary recommendation to "[d]etermine whether it should develop additional controls to ensure it informs survivor beneficiaries of their option to delay their application for retirement benefits."  However, this too has not been implemented.

28.     In the 2019 Spring OIG Semiannual Report, SSA represented that an:

> IT Modernization Benefits Domain is currently in the development phase
> for the Beta release of the new Preliminary Claims System.  SSA will add
> this capability to its product backlog and evaluate the current preliminary
> and initial claims process to identify enhancements to assist technicians
> when informing beneficiaries of entitlements and eligibility options.  SSA
> continually reviews its product roadmap to determine a potential
> implementation timeframe for this functionality.  SSA's current roadmap
> for the IT Modernization project shows FY 2022 as a potential
> implementation timeframe.

*Id.* at 40.  However, as of the most recent 2022 Fall OIG Semiannual Report, no such project has been implemented, nor have there been any updates on this plan.

29.     Instead, the 2022 Spring and Fall OIG Semiannual Reports indicate that "SSA considers this recommendation implemented; however, it has not provided sufficient information to enable our audit team to verify that it has fully implemented it."  2022 Fall OIG Semiannual Report, at 42, 44; 2022 Spring OIG Semiannual Report, at 40, 42.

---

%20Fall%202019_0.pdf; 2019 SSA OIG Semiannual Rep. pt. 1, at 33, 40, 46 (hereinafter, "2019 Spring OIG Semiannual Report"), https://oig-files.ssa.gov/semiannual/SARC%20-%20June.pdf; 2018 SSA Semiannual Rep. pt. 2, at 93 (hereinafter, "2018 Fall OIG Semiannual Report"), https://oig-files.ssa.gov/semiannual/FALL%202018%20SARC%20-%20FINAL.pdf.

30.     The SSA has failed to fulfill its fiduciary duties to Plaintiff and the Class, all to their continuing detriment.

**B.     Plaintiff's Individual Experience**

31.     Plaintiff was born on April 3, 1954 and was employed as a foreign language teacher/professor at local colleges and universities for approximately 37 years.

32.     Plaintiff married her first husband, Andre Hellebuyck, on September 12, 1979, and they were divorced on June 11, 1996.  Mr. Hellebuyck passed away on November 2, 2013.

33.     On September 28, 1996, Plaintiff married her second husband, Robert L. Sewell, who passed away on June 26, 2016.

34.     On April 3, 2016, Plaintiff, then 62, became eligible for SSA retirement benefits.

35.     Plaintiff applied for her own retirement benefits and her first deceased spouse's survivor benefits on November 4, 2016.[6]  She began receiving both benefits in January 2017. However, SSA never informed her that she had the option to defer her retirement benefits and that doing so would maximize her total benefit.  In fact, SSA recommended Plaintiff to apply for Mr. Hellebuyck's benefits at that time, all to her detriment and loss.

36.     In January 2017, SSA awarded Plaintiff survivor benefits for her first husband and her own retirement benefits as follows: (1) $312.80 for survivor benefits, and (2) $800.20 for Plaintiff's own retirement benefits.

37.     Because of SSA's policy, Plaintiff applied for her survivor and retirement benefits concurrently.  In doing so, she was precluded from obtaining delayed retirement credits to which

---

[6]A divorced spouse may receive benefits as a surviving spouse, provided that, among other things, the marriage lasted 10 years or more.  *See* 20 C.F.R. § 404.336.  Additionally, Plaintiff was considered unmarried at the time she applied for her divorced spouse widow benefits because her second husband had also passed away.

she otherwise would have been entitled had she been informed that she could have applied for only her survivor benefits.  If she had been properly informed that she was not required to immediately receive her retirement benefits, she could have earned delayed retirement credits and increased the overall value of her SSA benefits.

38.     On March 10, 2020, Plaintiff applied for her second spouse's survivor benefits. In April 2020, Plaintiff reached full retirement age and became entitled to survivor benefits related to her second husband, Mr. Sewell.

39.     By law and statute, a portion of the earnings of Plaintiff, the Class, and their spouses' earnings are held by the SSA until they elect to receive those earnings in the form of Social Security benefits.

40.     Defendants have a fiduciary and administrative duty to Plaintiff and the Class to ensure that their Social Security benefits are maximized.

41.     As set forth herein, Defendants breached their duties to Plaintiff and the Class by failing to inform them of their ability to maximize the amount of benefits to which they were (and are) entitled.

## **CLASS ACTION ALLEGATIONS**

42.     Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and as a Class action based on Fed. R. Civ. P. 23, on behalf of the following Class:

> All dual entitled beneficiaries who, at the time of their application to SSA for survivor benefits, were between the age of 62 and 70 and did not delay the retirement portion of their benefits until later to maximize their benefit.

Excluded from the Class are Defendants, any agents or representatives of Defendants, and the Judge(s) to whom this case is assigned.

43.    **Numerosity:** The Class is so numerous that joinder of all parties is impracticable. The exact number of Class members is currently unknown and can only be obtained through appropriate discovery.  However, based on the 2018 OIG Audit, and upon information and belief, there are at least 13,000 Class members.

44.    **Commonality:** There are questions of law and fact common to all Class members that predominate over questions only affecting individual Class members, including:

    a.    Whether SSA employees failed to follow the POMS by not advising Class members that they can maximize their retirement benefits if they delayed collecting their retirement benefit.

    b.    Whether Defendants breached their fiduciary duties by failing to enforce POMS, which requires SSA employees to advise Class members that they may delay collecting their retirement benefits to maximize those benefits.

    c.    Whether Defendants' refusal to adopt OIG's recommendations was arbitrary, capricious, and contrary to law.

45.    Similar or identical statutory and common law violations, institutional practices, and injuries are involved in this case.  Individual questions, if any, pale by comparison, in both quantity and quality, to the common questions that predominate this action.

46.    **Typicality:** Plaintiff's claims are typical of the claims of all other Class members and arise from the same course of conduct by Defendants and the relief sought is common to all Class members.  In addition, Defendants have acted and continue to act on grounds generally applicable to all Class members, thereby making injunctive and declaratory relief appropriate to the Class a whole.

47.    **Adequacy:** Plaintiff will fairly and adequately represent the members of the Class.  Plaintiff's interests do not conflict with the interests of the other Class members that Plaintiff seeks to represent.  Plaintiff and the Class are represented by Shaffer & Gaier, LLC and Miller Shah LLP, whose attorneys are experienced in class action litigation and will adequately represent the Class.

48.    **Predominance:** Pursuant to Fed. R. Civ. P. 23(b)(3), questions of law and fact common to Class members predominate, in both quantity and quality, over any questions affecting only individual Class members, including legal and factual issues relating to liability and damages.

49.    **Superiority:** A class action is superior to other available methods for fairly and efficiently adjudicating this case because of the number of Class members involved.  Individual litigation would be unduly burdensome to the courts in which individual litigation would proceed, and would pose the risk of different and inconsistent case law.

50.    Defendants also have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief to Class members as a whole is appropriate.

### WAIVER OF EXHAUSTION AND 60-DAY REQUIREMENT FOR THE CLASS

51.    The Court should excuse Plaintiff and the Class from their obligation to exhaust administrative remedies, as well as equitably toll the 60-day requirement to appeal a final agency decision.

52.    While actions against an administrative department or agency typically require complainants to show that they have exhausted administrative remedies and that a final decision of the Administration was appealed within 60 days, both requirements may be excused utilizing

the same standard.  *See Dixon v. Shalala*, 54 F.3d 1019, 1031 n.3 (2d Cir. 1995) ("exhaustion may be excused for the same reasons requiring tolling of the statute of limitations") (citing *City of New York v. Heckler,* 476 U.S. 467, 482 (1986)).

53.    Courts have equitably tolled the 60-day requirement where the case "involve[s] an unpublished SSA policy which resulted in the denial of benefits over an extended period of time[,] . . . [such as a] policy [that] . . . was never published in the Federal Register but was instead implemented through internal memoranda and the quality assurance process." *Dixon*, 54 F.3d at 1027 (citing *Bowen v. City of New York*, 476 U.S. 467 (1986)).

54.    Similar to *Dixon*, this case involves an unpublished SSA policy that was never published in the Federal Register, but instead was included in the POMS, an instruction manual for SSA employees and agents.  Additionally, Defendant's failure to abide by these policies led to the injuries Plaintiff and the Class have suffered and will continue to suffer.  However, because of the nature of these policies, Plaintiff and the Class were unaware that such actions (or lack thereof) were taken against them, and, thus, they could not have reasonably exhausted their administrative remedies.

55.    Furthermore, Defendant's unpublished policy resulted in the systematic, erroneous reduction of benefits to Plaintiff and the Class over an extended period of time.

56.    Because the Class did not learn of Defendant's unpublished, internal policy to entitle claimants to be dually benefitted without explaining the consequences, waiver of the exhaustion requirement is appropriate and the Court should equitably toll the 60-day requirement for the Class members who have not otherwise met that requirement.

//

//

## COUNT ONE
## BREACH OF FIDUCIARY DUTY

57.     Plaintiff incorporates by reference all preceding allegations as if set forth fully herein.

58.     Defendants owe a fiduciary duty to Plaintiff and the Class to ensure they are given the information necessary to make an informed decision about receiving the maximum amount of benefits to which they are entitled, all in accordance with the policies that the SSA must follow, such as Social Security-GN 00201.005 General Application Taking Practices §§ C3, C4.

59.     Defendants breached their duty to Plaintiff and the Class by failing to give them the information necessary to make an informed decision about receiving the maximum amount of benefits to which they are entitled, despite being required to do so.

60.     Plaintiff and the Class suffered damages as a result of the aforesaid breaches, all to their detriment and loss.

## COUNT TWO
## VIOLATION OF SOCIAL SECURITY POLICIES AND PROCEDURES

61.     Plaintiff incorporates by reference all preceding allegations as if set forth fully herein.

62.     At all times relevant hereto, Defendants were obligated to conform and comply with the policies and procedures set forth in Defendants' POMS, GN-General, ch. GN 00204, *et seq.*

63.     Specific policies that Defendants failed to follow include:

**C.3.  Disadvantages of filing**

There are situations where filing may adversely affect current or future benefits. Discuss the following when applicable:

When a claimant is eligible for a widow(er)'s benefit (WIB) and a retirement insurance benefit (RIB) at the time of filing, ***inform the claimant*** that the application will count as an application for both types of benefits unless the applicant chooses to restrict the scope of the application. ***Explain the option*** to restrict the scope of the application to widow(er)'s benefits only, and that doing so will allow his or her own RIB to accumulate delayed retirement credits (DRCs) beginning with FRA. ***Explain that restricting*** the scope of the application to widow(er)'s benefits only will allow him or her to apply for RIB separately, at a later time.

*See* Social Security-GN 00201.005 General Application Taking Practices § C3 (emphasis added).

### C.4. Documenting a filing decision that may adversely affect current benefits or future benefits

If an individual makes a filing decision that may adversely affect his or her current or future benefits, ***describe*** the impact to the individual.

*See* Social Security-GN 00201.005 General Application Taking Practices § C.4 (emphasis added).

64.     The Administration failed to comply with the SSA's policy when its agents and employees failed to describe the adverse impact to Plaintiff and the Class when they elected to receive retirement benefits at the same time as survivor benefits instead of deferring their retirement benefit.

65.     At all times relevant when applying for benefits, Plaintiff and the Class reasonably assumed that Defendants' representatives and employees were conforming and complying with the SSA's policies and procedures.

66.     Defendants' failures to comply with their own policies caused Plaintiff and the Class to suffer financial damages in the form of lower benefits.

//

//

15

## COUNT THREE
### AGENCY ACTION IS ARBITRARY, CAPRICIOUS, OR CONTRARY TO LAW

67.     Plaintiff incorporates by reference all preceding allegations as if set forth fully herein.

68.     A federal agency may not take any action or promulgate any sub-regulatory guidance that is arbitrary, capricious, or contrary to law or to the agency's own policies and regulations.

69.     After the OIG Report recommended that the SSA should review all dually entitled survivors to determine if Defendants failed to inform and explain to them the disadvantages of filing for retirement benefits rather than waiting until the age of 70, Defendants took no action, despite initially stating that they would.  Defendants' policies required (and require) SSA employees to inform Plaintiff and Class members that an application for survivor and retirement benefits count as an application for both types of benefits unless the applicant chooses to restrict the scope of the application.  SSA employees should have then explained how Plaintiff and the Class could restrict the scope of their application to only survivor benefits, which would allow them to accumulate delayed retirement credits and apply for their retirement benefits at a later time.  However, Defendants failed to follow these policies and, as a result, Plaintiff and the Class were unable to maximize the value of their overall benefits because they were precluded from accruing delayed retirement credits.  Defendants' continued failure to abide by their own policies and regulations was (and is) arbitrary, capricious, or otherwise contrary to law.

70.     Plaintiff and the Class members have been harmed by Defendants' practices and remain at risk of future harm if Defendants' unlawful practices are not enjoined.

//

//

## COUNT FOUR
### VIOLATION OF DUE PROCESS CLAUSE

71.    Plaintiff incorporates by reference all preceding allegations as if set forth fully herein.

72.    The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides in relevant part that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."

73.    Plaintiff and the Class's interest in receiving Social Security benefits is a property right covered by the Due Process Clause of the Fifth Amendment.

74.    Defendants were instructed to review all dually entitled survivors identified to determine if Defendants failed to inform and explain to them the consequences of filing for retirement benefits, even though it was to their disadvantage.  Defendants' failure to do so has resulted in the underpayment of benefits to Plaintiff and the Class.

75.    Defendants' failure to follow their own rules is irrational, arbitrary, capricious, and/or fails to apply ascertainable standards in a rational and consistent manner, in violation of Plaintiff and Class members' rights under the Due Process Clause of the Fifth Amendment, U.S. Const. Amend. V.

76.    Plaintiff and the Class have been harmed by this custom and practice and remain at risk of future harm if Defendants' unlawful practices are not enjoined.

## COUNT FIVE
### VIOLATION OF DUE PROCESS CLAUSE—ADEQUATE NOTICE

77.    Plaintiff incorporates by reference all preceding allegations as if set forth fully herein.

78. The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides in relevant part that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."

79. Plaintiff and the Class's interest in receiving Social Security benefits is a property right covered by the Due Process Clause of the Fifth Amendment.

80. Defendants' failure to give such notice to Plaintiff and Class members is irrational, arbitrary, capricious, contrary to law or regulation, and/or neglects to apply ascertainable standards in a rational and consistent manner, in violation of Plaintiff's and Class members' rights under the Due Process Clause of the Fifth Amendment, U.S. Const. Amend. V, in multiple ways, including, but not limited to:

   a. Failing to review all dually entitled survivors identified to determine if Defendants failed to inform and explain to them the disadvantages of filing for retirement benefits;

   b. Failing to describe the adverse impact to Plaintiff and the Class when they elected to receive retirement benefits at the same time as their survivor benefits; and

   c. Failing to give Plaintiff and the Class the information necessary to make an informed decision about how to receive the maximum amount of benefits to which they are entitled.

81. Plaintiff and the Class have been harmed by this custom and practice and remain at risk of future harm if Defendants' unlawful practices are not enjoined.

**COUNT SIX**
**MANDAMUS**

82. Plaintiff incorporates by reference all preceding allegations as if set forth fully herein.

83. The SSA abides by the Social Security Act, which provides several guidelines to carry out the law. Of these guidelines, the "Program Operations Manual System . . . [is]

instructive, interpretive, clarifying, and/or administrative and not designated as advisory or discretionary."  20 C.F.R. § 404.1602.

84.     The POMS instructs SSA employees that "[w]hen a claimant is eligible for a widow(er)'s benefit (WIB) and a retirement insurance benefit (RIB) at the time of filing, inform the claimant that the application will count as an application for both types of benefits unless the applicant chooses to restrict the scope of the application.  Explain the option to restrict the scope of the application to widow(er)'s benefits only, and that doing so will allow his or her own RIB to accumulate delayed retirement credits (DRCs) beginning with FRA.  Explain that restricting the scope of the application to widow(er)'s benefits only will allow him or her to apply for RIB separately, at a later time."  *See* Social Security-GN 00201.005 General Application Taking Practices § C3.

85.     Furthermore, "[i]f an individual makes a filing decision that may adversely affect his or her current or future benefits, [SSA employees must] describe the impact to the individual."  *See* Social Security-GN 00201.005 General Application Taking Practices § C.4.

86.     Defendants' duty to act is plainly prescribed and without discretion.

87.     Plaintiff and the Class have the right to receive survivor and retirement benefits if they are eligible under applicable statute and regulation.  Plaintiff and the Class have the right to be informed that an application to either the survivor or retirement benefits will count as an application for both types of benefits unless the applicant chooses to restrict the scope of the application, as well as to be informed of any negative impacts such filing decisions may have. Plaintiff and the Class also have the right not to be deprived of their property by arbitrary, capricious, or irrational government action.

88.     Defendants failed to perform their nondiscretionary regulatory duty to:

a. Provide advice as to how an application to either the survivor or retirement benefits will count as an application for both types of benefits unless the applicant chooses to restrict the scope of the application; and

b. Provide advice on any negative impact of a filing decision with regard to their survivor and retirement benefits.

89. This duty is owed to all Class members. Defendants' failure to perform their non-discretionary duty results in the threat of financial harm to Plaintiff and the Class by reducing the amount of the retirement benefits to which they are entitled.

90. Plaintiff seeks to compel Defendants to perform this non-discretionary duty pursuant to 28 U.S.C. § 1361.

91. No alternative means of relief exists.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class respectfully pray that this Court enter judgment:

(a) Assuming jurisdiction over this matter;

(b) Entering an Order certifying the proposed Class, designating Plaintiff as the named representative of the Class, and designating the undersigned as Class Counsel;

(c) Declaring that:

i. Defendants' interpretation and implementation of SSA, POMS, GN-General, ch. GN 00204, *et seq.* is arbitrary, capricious, or contrary to law; and

ii. Defendants' failure to inform Plaintiff and the Class of their rights violate their right to due process;

(d) Preliminary and permanently enjoining Defendants and ordering them immediately to re-calculate all survivor and retirement benefit computations and to provide full payment, including back benefits due, as a result of the re-calculations to Plaintiff and the Class;

(e)     Preliminary and permanently enjoining Defendants and ordering them to send notices that adequately inform recipients of their rights;

(f)     Awarding reasonable attorneys' fees, costs, and disbursements; and

(g)     Granting such other and further relief as the Court may deem just and proper.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and the Class demand trial by jury in this action of all issues so triable.

Dated: April 6, 2023

Respectfully,
/s/ Laurie Rubinow_____
Laurie Rubinow
James E. Miller
Miller Shah LLP
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: lrubinow@millershah.com
        jemiller@millershah.com

Michael H. Gaier, Esquire
Shaffer & Gaier, LLC
8 Penn Center, Suite 400
1628 John F. Kennedy Boulevard
Philadelphia, PA  19103
Telephone: (215) 751-0100
Facsimile: (215) 751-0723
Email: mhgaier@shaffergaier.com